UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| VERN MCKINLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 15-cv-1764 (KBJ) |
| | ) | |
| FEDERAL DEPOSIT INSURANCE CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT WITHOUT PREJUDICE AND REQUIRING SUPPLEMENTAL SUBMISSIONS

In cases brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the affidavits or declarations that the government files in support of its motion for summary judgment must be "non-conclusory[,]" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation marks and citation omitted), and describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrat[ing] that the information withheld logically falls within the claimed exemption," *Military Audit Project v. Casey,* 656 F.2d 724, 738 (D.C. Cir. 1981). The agency's duty to provide a detailed, non-conclusory description of its withholdings arises from the fact that "the agency in a FOIA case has both the burden of proof and all the evidence," *Elec. Frontier Found. v. Dep't of Justice*, 826 F. Supp. 2d 157, 164 (D.D.C. 2011) (internal quotation marks and citations omitted), and the agency's fulfillment of this disclosure duty serves "three interrelated functions . . . : (a) to force the agency to carefully analyze any information withheld; (b) to enable the

district court to fulfill its duty of evaluating the applicability of claimed exemptions; and (c) to empower the plaintiff to present his case to the district court[,]" *Budik v. Dep't of Army*, 742 F. Supp. 2d 20, 35 (D.D.C. 2010) (citing *Keys v. Dep't of Justice*, 830 F.2d 337, 349 (D.C. Cir. 1987)).

Before this Court at present are cross-motions for summary judgment in the instant FOIA case, which center on the parties' disagreement about whether or not Defendant Federal Deposit Insurance Corporation ("FDIC") has provided sufficient support for its invocation of FOIA Exemptions 4, 5, and 8 to withhold information in response to two document requests that Plaintiff Vern McKinley submitted to the agency. (*See* Def.'s Mot. for Summ. J. ("Def.'s Mot."), ECF No. 10, at 4 ("Because these records fall squarely within the requirements of FOIA Exemptions 4, 5, and 8, the FDIC properly withheld these documents."); Pl.'s Mem. in Opp'n to Def.'s Mot. & in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Mot."), ECF No. 12-1, at 6 ("The FDIC has not come close to satisfying its burden of demonstrating that all responsive records are properly being withheld.").)[1] For the reasons explained below, this Court agrees with Plaintiff that the FDIC's *Vaughn* index and supporting declaration manifestly fail to assert the government's reasons for withholding the documents at issue with sufficient detail; therefore, both parties' cross-motions will be **DENIED WITHOUT PREJUDICE**, and the FDIC will be ordered to file a supplemental declaration and/or an updated *Vaughn* index that addresses the issues identified in this Opinion. This

---

[1] Page-number citations to documents the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

Court will also require the government to submit all of the documents that remain at issue to the Court for *in camera* review.

**I.     BACKGROUND**

On February 13, 2015, Vern McKinley submitted two FOIA requests to the FDIC, seeking access to "all records regarding consideration by the FDIC of placing Citibank into receivership that occurred between October 2008 and April 2009[,]" and "all records regarding any analysis by the FDIC of Citibank's solvency between October 2008 and April 2009." (Def.'s Statement of Material Facts Not in Dispute ("Def.'s Material Facts"), ECF No. 10-1, ¶¶ 1–3 (internal quotation marks and citations omitted).) In response to McKinley's FOIA requests, FDIC staff conducted searches for responsive documents in the FDIC's Division of Resolutions and Receiverships, as well as the Division of Risk Management Supervision. (*See id.* ¶ 4.) The FDIC's searches yielded 19 responsive records. (*See id.* ¶ 5.)

In a letter dated May 5, 2015, the FDIC informed McKinley that the agency had identified 19 records responsive to McKinley's requests, but that the agency had determined that all of the records were exempt from disclosure pursuant to FOIA Exemptions 4, 5, and 8, and that none of the documents contained any reasonably segregable, non-exempt information. (*See id.* ¶¶ 5, 8.)[2] Approximately one month later, McKinley submitted an administrative appeal of the agency's decision, in which

---

[2] These three exemptions permit the withholding of information ranging from "trade secrets and commercial or financial information obtained from a person and privileged or confidential[,]" 5 U.S.C. § 552(b)(4), to "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[,]" *id.* § 552(b)(5), to records "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions[,]" *id.* § 552(b)(8).

3

he objected to the lack of information that was "cited to justify the claims of these exemptions[,]" and he further argued that the agency had failed to meet its burden of demonstrating that no reasonably segregable information existed within the documents that had been withheld. (Pl.'s Admin. Appeal Letters ("Pl.'s Appeal"), Ex. 3 to Def.'s Mot., ECF No. 10-3, at 11.) McKinley also maintained that the FDIC had waived the stated exemptions "through prior disclosure of the substance of the requested records." (*Id.* at 12.) The FDIC denied McKinley's appeals in their entirety on July 9, 2015 (*see* Def.'s Material Facts ¶ 12), and approximately three months later, McKinley initiated the instant lawsuit in order "to compel compliance with" the FOIA (Compl., ECF No. 1, at 1).

Shortly after McKinley filed the instant action, and in an effort to narrow the issues before the Court, the FDIC agreed to provide a *Vaughn* index to McKinley. (*See* Def.'s Material Facts ¶ 13.) McKinley reviewed this listing, and notified the Court that he now challenges only twelve out of the agency's nineteen original record withholdings. (*See* Joint Status Report, ECF No. 9, ¶ 5.) In addition, McKinley has further clarified that he is not mounting any challenge to the adequacy of the agency's search. (*See* Def.'s Material Facts ¶ 15.)

On March 16, 2016, the FDIC filed a motion for summary judgment, to which it attached both a statement of material facts as to which there is no genuine dispute and a supporting declaration from the supervisor of the FDIC's FOIA group. (*See* Def.'s Mot.; Def.'s Material Facts; Decl. of Hugo A. Zia ("Zia Decl."), Ex. to Def.'s Mot., ECF No. 10-2, at 1.) Also attached to the FDIC's motion is a *Vaughn* index that is formatted as a table with 19 entries that correspond to the 19 withheld documents—

4

seven rows of which are shaded in gray to indicate the withholdings that McKinley is no longer challenging. (*See Vaughn* Index, Ex. 5 to Def.'s Mot., ECF No. 10-3, at 22–31.) In its summary judgment motion, the FDIC first argues that McKinley failed to exhaust the applicable administrative appeal process. (*See* Def.'s Mot. at 8 ("[Plaintiff] challenged the FDIC's failure to provide detailed explanations of the reasons for withholding records from disclosure[,]" but "did not raise a [substantive] challenge to any of the three specific exemptions claimed by the FDIC in denying his FOIA requests").) The agency further contends that it appropriately withheld the twelve responsive records at issue pursuant to Exemptions 4, 5, and 8, and also that the responsive records contain no non-exempt, segregable information. (*See id.* at 9–15.)

McKinley filed a combined brief in opposition and cross-motion for summary judgment on April 14, 2016. (*See generally* Pl.'s Mot.) In that filing, McKinley insists that he properly exhausted all administrative remedies (*see id.* at 9–10), and he also maintains that the FDIC has not provided sufficient support for its invocation of Exemptions 4, 5, and 8 (*see id.* at 10–14). (*See also* Pl.'s Reply in Supp. of Pl.'s Cross-Mot. for Summ. J. ("Pl.'s Reply"), ECF No. 15, at 5 ("[T]he FDIC failed to provide the Court with the information necessary for it to determine whether the records responsive to McKinley's FOIA requests are being properly withheld.").) In addition, McKinley argues that the agency has officially acknowledged the information that it has withheld, and therefore, disclosure is required notwithstanding any otherwise applicable exemptions. (*See* Pl.'s Mot. at 15–17.)

On May 23, 2016, the parties' cross-motions became ripe for this Court's review. (*See* Def.'s Mot.; Pl.'s Mot.; Def.'s Consolidated Reply in Supp. of its Mot. & Opp'n to

5

Pl.'s Cross-Mot. for Summ. J. ("Def.'s Reply"), ECF No. 13; Pl.'s Reply.)

## II. LEGAL STANDARD

The "FOIA generally requires the disclosure, upon request, of records held by a federal government agency[.]" *Gov't Accountability Project v. FDA*, 206 F. Supp. 3d 420, 428 (D.D.C. 2016) (alteration in original) (internal quotation marks and citation omitted). However, the FOIA also includes nine exemptions that permit agencies to withhold certain information from disclosure. *See Judicial Watch, Inc. v. Dep't of the Treasury*, 796 F. Supp. 2d 13, 23 (D.D.C. 2011). These exemptions are to be construed narrowly, *see Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976), and the government bears the burden of demonstrating that any withheld information falls within the claimed exemptions, *see Maydak v. Dep't of Justice*, 218 F.3d 760, 764 (D.C. Cir. 2000).

Significantly for present purposes, to prevail on a motion for summary judgment that claims that an agency has satisfied its duties under the FOIA, "the defending agency must prove that each document that falls within the class requested either has been produced, is unidentifiable or is wholly exempt from the Act's inspection requirements." *Weisberg v. Dep't of Justice*, 627 F.2d 365, 368 (D.C. Cir. 1980) (internal quotation marks and citation omitted); *see also McKinley v. FDIC*, 756 F. Supp. 2d 105, 111 (D.D.C. 2010) ("[T]he burden of proof is always on the agency to demonstrate that it has fully discharged its obligations under the FOIA."). To satisfy its burden of establishing the applicability of an exemption, a defendant may rely on declarations that are reasonably detailed and non-conclusory, and this showing may be made in the form of a *Vaughn* index that describes each document that is being withheld

6

and includes other identifying information, and that also provides both the particular FOIA exemption that the government is asserting with respect to that document and the reasons that the government believes that exemption is applicable. *See Pub. Emps. For Envtl. Responsibility v. EPA*, 213 F. Supp. 3d 1, 9 (D.D.C. 2016). Because the purpose of an agency's declaration or *Vaughn* index is "to permit adequate adversary testing of the agency's claimed right to an exemption[,]" the proffered justification must contain "an adequate description of the records" and "a plain statement of the exemptions relied upon to withhold each record[.]" *Nat'l Treasury Emps. Union v. U.S. Customs Serv.*, 802 F.2d 525, 527, 527 n.9 (D.C. Cir. 1986) (citation omitted); *see also Morley v. CIA*, 508 F.3d 1108, 1115 (D.C. Cir. 2007) ("[C]onclusory and generalized allegations of exemptions are unacceptable[.]" (internal quotation marks and citations omitted)).

## III. DISCUSSION

Plaintiff argues here, as he did on administrative appeal, that the FDIC "has completely failed to demonstrate, either by *Vaughn* indexes, affidavits, or declarations, that its withholdings are proper or that it can overcome the 'strong presumption' in favor of disclosure." (Pl.'s Mot. at 11.) Thus, the issue before this Court at present is whether the FDIC has adequately supported its invocation of Exemptions 4, 5, and 8 with respect to the twelve disputed documents that the agency has withheld.[3] For the

---

[3] With its odd contention that McKinley raised no *substantive* challenge to the agency's invocation of these exemptions during the administrative appeal process (*see* Def.'s Mot. at 8–9), the FDIC has clouded what is otherwise crystal clear: McKinley has consistently insisted that the agency has not provided sufficiently detailed reasons for invoking Exemptions 4, 5, and 8, and as a result, says McKinley, no substantive challenge can be made (*see* Pl.'s Appeal at 11 ("[M]ore detail on the precise type of information and underlying reasons for the withholdings is necessary to allow me to assess the propriety of the claimed exemptions.")). Consequently, while the agency is correct that McKinley did not raise any substantive concerns about the exemptions during the administrative appeal, it is wrong to suggest that McKinley is saying something different now, or that he is foreclosed from ever making any such substantive arguments regarding the exemptions in the context of the instant case.

7

reasons explained below, this Court agrees with Plaintiff that the FDIC has failed to provide sufficient information to enable the Court "to make a rational decision [regarding] whether the withheld material must be produced[.]" *King v. Dep't of Justice*, 830 F.2d 210, 219 (D.C. Cir. 1987) (internal quotation marks and citation omitted). Accordingly, summary judgment will not be granted in favor of either party at this juncture, and the Court will order the FDIC to submit supplemental filings.

### A. Exemption 4 Requires An Assessment Of Whether The Information Was Disclosed To The Agency Voluntarily Or Upon Compulsion

The FDIC maintains that FOIA Exemption 4 protects eleven of the twelve documents at issue. (*See* Zia Decl. at 5.) Exemption 4 protects from disclosure "trade secrets and commercial or financial information obtained from a person and privileged or confidential[.]" 5 U.S.C. § 552(b)(4). "Unlike many other types of information subject to an agency's control, materials implicating Exemption 4 are generally not developed within the agency. Instead, [the agency] must procure commercial [or financial] information from third parties, either by requirement or by request." *Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 148 (D.C. Cir. 2006).

Notably, "[c]ourts employ different tests to determine whether information" is privileged and confidential within the meaning of Exemption 4, "depending in part on whether the initial disclosure of the information was voluntary or compulsory." *Gov't Accountability*, 206 F. Supp. 3d at 429. As a result, "the court must first determine whether the information was provided to the government voluntarily or if it was required to be provided[,]" and "[d]epending on the answer to this question, the Court must then apply the appropriate test for privilege/confidentiality." *McKinley*, 756 F. Supp. 2d at 114 (internal quotation marks and citations omitted); *see also Gov't*

*Accountability*, 206 F. Supp. 3d at 429 (outlining applicable test where a party is required to submit the information to the government); *Defs. of Wildlife v. Dep't of the Interior*, 314 F. Supp. 2d 1, 16 (D.D.C. 2004) (describing applicable test when a party voluntarily provides the information).

In the instant case, the FDIC has made no effort to explain whether Citibank voluntarily or involuntarily provided the information that the agency is withholding pursuant to Exemption 4. (*See, e.g.*, *Vaughn* Index at 31 (Document 18) (characterizing a "[t]able setting out categories of assets in ring-fenced portfolio, valuations, credit losses, and examiner judgments" as exempt under Exemption 4 simply and solely because it "contains commercial or financial information obtained from Citibank and privileged or confidential"); *see also id.* (Document 19); *id.* at 30 (Document 15).) The agency's declaration likewise merely maintains that "[t]he information contained within those eleven documents consists of confidential financial information obtained from Citibank," but does not specify the manner in which the FDIC obtained this information. (Zia Decl. at 5.) In the absence of details from the FDIC regarding its acquisition of the allegedly exempt information from Citibank, this Court cannot identify and apply the appropriate test for privilege or confidentiality. *See McKinley*, 756 F. Supp. 2d at 114.

### B. Exemption 5 Protects Only Records That Are Predecisional And Deliberative

The FDIC also contends that it has properly withheld eight documents pursuant to FOIA Exemption 5. (*See* Zia Decl. at 5.) Exemption 5 permits the withholding of "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C.

9

§ 552(b)(5). "This exemption protects documents normally privileged in the civil discovery context, such as materials shielded by . . . the deliberative process privilege." *Pub. Emps.*, 213 F. Supp. 3d at 10 (internal quotation marks and citations omitted). The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated[.]" *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citation omitted). However, this exemption cannot be indiscriminately invoked, because to qualify for protection under the privilege, materials must "be both predecisional and deliberative." *Pub. Citizen, Inc. v. Office of Mgmt. and Budget*, 598 F.3d 865, 874 (D.C. Cir. 2010) (internal quotation marks and citation omitted). A document is "predecisional if it was generated before the adoption of an agency policy and deliberative if it reflects the give-and-take of the consultative process." *Judicial Watch*, 449 F.3d at 151 (internal quotation marks and citations omitted).

Importantly, in order to demonstrate that Exemption 5 applies, the agency must establish "*what* deliberative process is involved, and the role played by the documents in issue in the course of that process." *Coastal States Gas v. Dep't of Energy*, 617 F.2d 854, 868 (D.C. Cir. 1980) (emphasis added). The agency need not "identify a specific decision in connection with which a memorandum is prepared[,]" *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 n.18 (1975); however, it must still show that "the document was generated as part of a definable decision-making process." *Gold Anti–Trust Action Comm., Inc. v. Bd. of Governors of the Fed. Reserve Sys.*, 762 F. Supp. 2d 123, 135–36 (D.D.C. 2011); *see also Pub. Emps.*, 213 F. Supp. 3d at 14 ("Although [the

agency] is not required to link each document to a specific action, it must do more to tie the materials to some definable process."). Moreover, "[i]n addition to explaining the 'function and significance of the document(s) in the agency's decisionmaking process,' the agency must describe 'the nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents.'" *Elec. Frontier Found.*, 826 F. Supp. 2d at 168 (quoting *Arthur Andersen & Co. v. IRS*, 679 F.2d 254, 258 (D.C. Cir. 1982)). "The need to describe each withheld document when Exemption 5 is at issue is particularly acute because the deliberative process privilege is so dependent upon the individual document and the role it plays in the administrative process." *Pub. Emps.*, 213 F. Supp. 3d at 11 (internal quotation marks and citation omitted); *see also Judicial Watch v. U.S. Postal Serv.*, 297 F. Supp. 2d 252, 260 (D.D.C. 2004) ("Without a sufficiently specific affidavit or *Vaughn* index, a court cannot decide, one way or the other, a deliberative process privilege claim.").

  In the instant case, the FDIC's submissions manifestly fail to provide necessary contextual information about the decision making processes to which the withheld documents contributed, and the role the withheld documents played in those processes. For example, the FDIC describes Document 17 as a "[m]emorandum analyzing various financial aspects of Citigroup[,]" including "the assets held by the holding company, lead bank, and other entities; the capital structure of the holding company, lead bank, and other entities; the valuation of the 'ring-fenced' portfolio, and terms on outstanding preferred stock." (*Vaughn* Index at 30–31.) But the agency's bald statement that this document "includes pre-decisional deliberations of government officials contemplating

11

actions relating to Citibank" (*id.* at 31), does not explain *how* records regarding "various financial aspects of Citigroup" (*id*. at 30) relate to any definable decision the agency has made. (*Compare* Zia Decl. at 6 (describing all eight documents withheld pursuant to Exemption 5 as "concern[ing] opinions and recommendations about potential future decisions and actions to be taken by the FDIC with respect to Citibank"), *with Judicial Watch, Inc. v. Dep't of Homeland Sec.*, 926 F. Supp. 2d 121, 135−36 (D.D.C. 2013) (endorsing as sufficient a *Vaughn* index that described the withheld information as "a discussion about the procedures for filing motions to dismiss proceedings in several Chief Counsel offices, including one employee's personal opinions as to whether or not the implementation of a certain procedure was appropriate"). Indeed, McKinley submitted two separate FOIA requests—one for documents regarding the FDIC's consideration of a Citibank receivership, and one for documents regarding the agency's analysis of Citibank's solvency (*see* Def.'s Material Facts ¶¶ 2−3)—yet neither the agency's *Vaughn* index nor the accompanying declaration identifies which of the FOIA requests each withheld document responds to, much less the particular decision making process to which each document relates.

Also missing from the FDIC's *Vaughn* index is a description of what role the withheld documents played in the agency's deliberative processes, as well as a clear indication of the relevant "chronology" necessary to demonstrate that documents were predecisional. *McKinley*, 756 F. Supp. 2d at 114 (internal quotation marks and citation omitted); *see also Petroleum Info. Corp. v. Dep't of the Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) ("A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision

12

already made." (internal quotation marks and citation omitted)). The memorandum labeled Document 13 is a good example: according to the FDIC's *Vaughn* index, Document 13 addresses the "supervisory actions *taken*" and the "agreements *reached*" that "provid[ed] the basis for a change in CAMELS rating." (*Vaughn* Index at 29 (emphasis added).) Because the agency has not sufficiently articulated the timeline surrounding the referenced change in CAMELS rating, however, this Court cannot determine whether the document at issue—which appears to summarize actions already taken and decisions already made—was in fact generated *before* the adoption of the agency's policy. What is more, the FDIC has entirely omitted any explanation regarding what role the memorandum played in the agency's CAMELS rating decision. *See, e.g.*, *Pub. Emps*, 213 F. Supp. 3d at 15 (noting that "[t]he closest the entry comes to explaining the function and significance of the document is to state that the 'record reflects analysis, recommendations, and opinions that were considered as part of the Agency's decision making process[,]'" and concluding that "[a] general statement of this sort is not sufficient to carry the agency's burden to explain the function and significance of a document in the agency's decisionmaking process" (citation omitted)).

Finally, the FDIC's *Vaughn* index and supporting declaration also fail to describe adequately the "nature of the decisionmaking authority vested in the office or person issuing the disputed document(s), and the positions in the chain of command of the parties to the documents." *Arthur Andersen*, 679 F.2d at 258 (internal quotation marks and citation omitted). The D.C. Circuit has instructed that, with respect to evaluating the withholding of material pursuant to the deliberative process privilege, the "identity of the parties to the memorandum is important[,]" because the relative position of the

author and recipient aids the court in determining whether a document is predecisional. *Coastal States*, 617 F.2d at 868. Here, the FDIC does at times reveal the author and recipient of a withheld document, but at no time does it describe the "relative positions in the agency's 'chain of command' occupied by the document's author and recipient." *Senate of the Commonwealth of P.R. on Behalf of Judiciary Comm. v. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987) (quoting *Arthur Andersen*, 679 F.2d at 258). (*See, e.g.*, *Vaughn* Index at 29 (Document 13) (noting that the Associate Director of Complex Financial Institutions sent the memorandum to the Director of the Division of Supervision and Consumer Protection, without explaining the relative positions of the author and recipient within the agency's chain of command).) Thus, it is difficult to discern the approximate hierarchy of the author and recipients, which is an important marker when determining whether a document has been properly withheld under Exemption 5. *See Coastal States*, 617 F.2d at 868 (explaining that "a document from a subordinate to a superior official is more likely to be predecisional, while a document moving in the opposite direction is more likely to contain instructions to staff explaining the reasons for a decision already made").

Ultimately, while the eight documents that the FDIC has withheld pursuant to Exemption 5 in the context of the instant case certainly *might* contain information that the deliberative process privilege protects, this Court cannot conclude that they do on the record before it. Accordingly, the FDIC is required to provide the Court with the following information for each document withheld pursuant to Exemption 5: "(1) the nature of the specific deliberative process involved, (2) the function and significance of the document in that process, and (3) the nature of the decisionmaking authority vested

in the document's author and recipient." *Pub. Emps.*, 213 F. Supp. 3d at 13 (internal quotation marks and citations omitted).

     **C.**    **Exemption 8 Protects Certain Agency Reports And Documents Related Thereto**

The FDIC also contends that each of the twelve disputed documents may be properly withheld pursuant to Exemption 8. (*See* Zia Decl. at 6.) Exemption 8 of the FOIA protects from disclosure records "contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions[.]" 5 U.S.C. § 552(b)(8). "Although the exemption is a mouthful," *Pub. Inv'rs Arbitration Bar Ass'n v. SEC* ("*Pub. Inv'rs II*"), 771 F.3d 1, 4 (D.C. Cir. 2014), it broadly protects certain reports—i.e., "examination, operating, or condition reports"—when such reports are prepared by or for an agency that meets the statutory definition, and it further protects all materials that are logically "related to" these three types of reports. 5 U.S.C. § 552(b)(8). "[T]he D.C. Circuit has distilled two legislative purposes behind Exemption 8": (1) "to ensure the security of financial institutions[,]" and (2) "to safeguard the relationship between the banks and their supervising agencies." *Pub. Inv'rs Arbitration Bar Ass'n v. SEC* ("*Pub. Inv'rs I*"), 930 F. Supp. 2d 55, 64 (D.D.C. 2013) (internal quotation marks and citations omitted), *aff'd* 771 F.3d 1 (D.C. Cir. 2014).

Although the FDIC maintains that Exemption 8 justifies its withholding of all twelve documents at issue in the instant case (*see* Zia Decl. at 6), this Court cannot conclude on the record before it that the FDIC has properly withheld the records pursuant to Exemption 8. As an initial matter, the FDIC's submissions fail to furnish the most basic threshold information, which is whether each of the twelve documents

15

consists of information that is directly *contained in* one of the three enumerated reports, or whether they include information that is simply *related to* any such report. *Compare Williams & Connolly LLP v. Office of the Comptroller of the Currency*, 39 F. Supp. 3d 82, 89 (D.D.C. 2014) (noting that the parties dispute "whether the requested documents are *'related to'* a bank examination for purposes of Exemption 8" (emphasis added)), *with Vaughn* Index at 27 (Document 9) (stating broadly that "[t]he document consists of information '*contained in or related to* examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions.'" (emphasis added) (quoting 5 U.S.C. § 552(b)(8))).

Moreover, even assuming, *arguendo*, that the FDIC need not identify whether the withheld record *is* a report or merely a document that *relates to* some report, this Court has no doubt that the agency must, at the very least, specify whether it characterizes the relevant report as an examination report, an operating report, or a condition report. *See, e.g.*, *Pub. Inv'rs II*, 771 F.3d at 4. The FDIC's *Vaughn* index does not do so; instead, it reveals that the document at issue is a 'table' or a 'memorandum,' and then merely parrots the statute in regard to the document's contents. For example, with respect to Document 15, the index says only that the document is a "[t]able listing various categories of assets, actual valuations, credit losses, and assumptions[,]" and then describes it as consisting "of information 'contained in or related to examination, operating, or condition reports prepared by, on behalf of, or for the use of an agency responsible for the regulation or supervision of financial institutions.'" (*Vaughn* Index at 30 (quoting 5 U.S.C. § 552(b)(8)).) Absent from this description is any sense of the

16

agency's position regarding *how* or *why*—precisely—these tables fall within the specific contours of Exemption 8. That is, are these asset tables that are directly included in an operating report? Alternatively, they might be tables that relate to a condition report. Or perhaps the agency has invoked this exemption for another reason entirely. As a result of this uncertainty, which arises based on what the *Vaughn* index currently reveals, this Court simply cannot discern the FDIC's particular justification for seeking to withhold each document. And this lack of specificity is significant, because the agency's description of the underlying report may well impact the Court's analysis of the propriety of the exemption. *See Pub Inv'rs II*, 771 F.3d at 8 (defining an examination report as "any report arising out of a 'close inspection' or 'careful inquiry'" (citation omitted)).

The agency's declarant—Hugo Zia—does little to further elucidate the agency's position. In his discussion of Exemption 8, Zia, too, adopts the general and inclusive language of the statute, stating that each of the twelve withheld documents pertains to disparate categories of information, such as information "contained in" or "related to examination and other condition reports concerning Citibank[,]" "financial information obtained from Citibank for the purpose of preparing such examination reports or other condition reports[,]" and "opinions and recommendations of examiners and other officials responsible for the examination and supervisory oversight of Citibank." (Zia Decl. at 6.) While this description accurately reflects the broad scope of information that potentially falls within the ambit of Exemption 8, it does nothing to link any of the categories of information that exemption covers to each of the twelve specific records that the agency has withheld. And therein lies the problem. Although "Congress has

17

intentionally and unambiguously crafted a particularly broad, all-inclusive definition" for Exemption 8, *Consumers Union of U.S., Inc. v. Heimann*, 589 F.2d 531, 533 (D.C. Cir. 1978), this expansive definition does not excuse the FDIC from its general obligation to provide "a relatively detailed justification [for its withholdings], specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply[.]" *Morley*, 508 F.3d at 1122 (internal quotation marks and citations omitted).

Put another way, however broad Exemption 8's disjunctive list might sweep, it is not so broad as to permit the agency to refuse to identify which of the many grounds within Exemption 8 purportedly applies to each document that the agency seeks to withhold. *Cf. id.* at 1115 ("[C]onclusory and generalized allegations of exemptions are unacceptable[.]" (internal quotation marks and citation omitted)); *McKinley*, 756 F. Supp. 2d at 115 (finding that "[b]ased on the extremely limited information provided by the FDIC, the Court cannot determine whether the material withheld contains or is derived from any part of an examination, operating report or condition report"). Accordingly, with respect to records withheld pursuant to Exemption 8, the FDIC must (1) explain whether the document at issue consists of information *contained within* a report, or *related to* a report, and (2) specify whether the relevant corresponding report is an examination report, operating report, or condition report.

**D.  A Court May Order Supplemental Filings As Needed In The Context Of A FOIA Case**

When a court finds that an agency has failed "to provide a sufficiently detailed explanation to enable the district court to make a de novo determination of the agency's claims of exemption, the district court . . . has several options, including inspecting the

18

documents in camera, requesting further affidavits, or allowing the plaintiff discovery." *Pub. Emps.*, 213 F. Supp. 3d at 16 (internal quotation marks omitted) (quoting *Spirko v. U.S. Postal Serv.*, 147 F.3d 992, 997 (D.C. Cir. 1998)). Given the deficiencies described above, this Court will direct the FDIC to revise its submissions so as to address the specific shortcomings the Court has identified, and will also require the submission of copies of the twelve documents at issue, which, when reviewed *in camera* in combination with the supplemental filings, will assist the Court in determining both the propriety of the claimed exemptions and also whether there is any reasonably segregable information that the FDIC must still produce. *See McKinley v. FDIC*, 744 F. Supp. 2d 128, 145 (D.D.C. 2010) ("[T]he Court has an affirmative obligation to address the issue of segregability *sua sponte*." (citation omitted)); *see also Mead Data Ctr., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977) ("[N]on-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions.").[4]

## IV. ORDER

For the reasons stated above, this Court concludes that the FDIC "has failed to supply [the Court] with even the minimal information necessary to make a

---

[4] While the FDIC argues that there is no "non-exempt information that must be segregated and disclosed" in this matter because "all of the records relate to the financial condition of Citibank" and are thus "exempt in their entirety from disclosure under FOIA Exemption 8" (FDIC's Denial of Pl.'s Administrative FOIA Appeals ("Final Denial Letter"), Ex. 4 to Def.'s Mot., ECF No. 10-3 at 18, 19), the Court cannot determine whether any portions of the withheld records can be reasonably segregated without first addressing whether the document is subject to exemption. Reviewing the documents *in camera* will assist the Court in making both the exemption and the segregability determination. *See Spirko*, 147 F.3d at 996 ("A judge has discretion to order *in camera* inspection" and "[t]he ultimate criterion is simply this: Whether the district judge believes that *in camera* inspection is needed in order to make a responsible de novo determination on the claims of exemption" (internal quotation marks and citation omitted)).

19

determination" regarding whether or not the documents at issue are exempt as a matter of law. *Coastal States*, 617 F.2d at 861. Therefore, it is hereby

**ORDERED** that the FDIC's [10] Motion for Summary Judgment and McKinley's [12] Cross-Motion for Summary Judgment are **DENIED WITHOUT PREJUDICE**, and the FDIC has until **September 5, 2017**, to submit either a revised *Vaughn* index and/or one or more supplemental declarations that explain with specificity the grounds for each withholding in the manner described above. In addition, on or before **September 5, 2017**, the FDIC shall lodge with the Court for *in camera*, *ex parte* review copies of the twelve documents that remain at issue in this case. It is

**FURTHER ORDERED** that Defendant shall file a renewed motion for summary judgment regarding the challenged withholdings on or before **October 3, 2017**; Plaintiff's consolidated opposition to Defendant's motion for summary judgment and cross-motion for summary judgment shall be filed on or before **October 31, 2017**; Defendant's consolidated reply in support of its motion for summary judgment and in opposition to Plaintiff's cross-motion for summary judgment shall be filed on or before **November 14, 2017**; and Plaintiff's reply in support for its cross-motion for summary judgment shall be filed on or before **November 28, 2017**.[5]

DATE: August 7, 2017

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge

---

[5] The instant Opinion and Order takes no position on McKinley's contention that the information he requested via FOIA has already been made public through an official and documented disclosure. (*See* Pl.'s Mot. at 15–17.) That assertion can be raised again in the context of Plaintiff's consolidated brief in opposition and renewed motion for summary judgment.